(48 Misc. Rep. 206)

### HAGAMAN et al. v. REINACH.

(Supreme Court, Special Term, New York County.   September, 1905.)

1. USURY—CONTRACT NOT NECESSARILY USURIOUS.
   Where money is loaned, to be repaid from the proceeds of collection, and the interest stipulated is such that, considering the uncertainty as to the time of payment, it might not exceed the lawful rate, the contract cannot be regarded as usurious.

2. SAME—VALID CONTRACT—EFFECT OF SUBSEQUENT USURY.
   An assignment and agreement which are not affected with usury at their inception, and are valid at that time, cannot be adjudged invalid because of any subsequent usurious transactions.
   [Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Usury, § 153.]

3. SAME—COLLECTION CHARGES.
   An agreement for exorbitant and oppressive collection charges is not usurious.

4. SAME—CONTRACT CONCEALING USURY.

    A pretended sale of an interest in an estate, which is merely used as a cover for an usurious· transaction, will not be upheld.

5. SAME—PLEADING—VARIANCE.

    Where usury is the foundation of a pleading, variances in the proof as to the exact excess may be material or not, according to the circumstances, and, if immaterial, may be disregarded, or, if material, amendment may be allowed.

    [Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Usury, § 295.]

Action by Benjamin Hagaman and another against Theresa Reinach, as executrix of Max Reinach, deceased. Judgment for plaintiffs.

George P. Breckenridge (Gould & Breckenridge, of counsel), for plaintiffs.

Henry M. Levin, for·defendant.

BISCHOFF, J. An inspection of the instruments executed between the plaintiffs and the defendant's testator under date of September 8, 1897, shows, and there is no pretense to the contrary, that the plaintiffs' assignment of their and each of their interests in the estate of Benjamin Hagaman, deceased, situated in Ohio, was given by them, and received by the defendant's testator, as security merely, firstly, for the collection charges agreed to be paid the testator; secondly, for an immediate advance of $3,200 to Benjamin Hagaman, one of the plaintiffs, and a further advance of $1,000 to be made him on December 8, 1897; and, thirdly, for such future advances as the de-· fendant's testator, the assignee, Max Reinach, might make to the plaintiffs or either of them. According to the terms of the agreement all the advances, immediate and future, were to be repaid from the proceeds of the assignee's collections, less his agreed charges for such collection, with interest at and after the rate of 5 per centum per annum, the interest on the advances particularly mentioned, to date from the 8th day of September, 1898, one year after the date of the agreement. As to these two advances, or loans, for such they were, whatever name be given them (Brittin v. Freeman, 17 N. J. Law, 191, 206), no usury is apparent from the evidence. True, the plaintiff Benjamin Hagaman paid a bonus of $200 at the time of the loan of $3,200; but it should be borne in mind that the interest reserved upon that sum, in addition to the bonus paid, was less than the limit of the lawful rate, 6 per centum per annum, that the interest reserved was to date from a year after the loan was made, and that the time for repayment of the principal was indefinite, repayment having been expressly agreed to be made when the net proceeds of the testator's collections should suffice for that purpose, the happening of which event was not fixed as to time. Crediting the testator, therefore, with 6 per centum, the lawful rate of interest, for the year immediately after the date of the loan, on $3,000, the net amount advanced by him, which is $180, there is nothing to show that the parties intended that the remaining $20 of the bonus paid, with the interest on the sum ostensibly loaned, at the rate actually reserved, 5 per centum, would or could in the aggregate exceed in the amount of the interest at the limit of

the lawful rate, at the time of the repayment of the principal; and waiving the question as to whether the taking of the bonus as a charge for interest in advance was or was not usury (Marvine v. Hymers, 12 N. Y. 227), under the circumstances, the bonus exacted covering the entire period of the loan—that is, until the net proceeds of the collection sufficed for its repayment, whatever the time might be—and charging the testator with interest at the lawful rate, $12, on the amount of the bonus exacted, for the first year after the loan, the situation remains unaltered.  The interest expressly reserved as such was but 5 per centum per annum, or 1 per centum less than the limit of the lawful rate, and the time of repayment of the principal was indefinite; that is, repayment was expressly postponed to be made out of the net proceeds of the collections, whenever the condition of the latter permitted it.  On $3,000, the net loan, the interest at the limit of the lawful rate was $180, and on $3,200, the ostensible loan, it was but $160 at the agreed rate, or $20 less per annum than at the limit of the lawful rate.  In the absence, therefore, of proof of an agreement for repayment of the loan at a fixed time, there is no basis for the computation of the interest actually reserved, in addition to the bonus exacted, with the interest on the amount of such bonus for the first year, so as to carry the aggregate charge for the use of the money loaned above the limit of the lawful rate of interest; and hence it cannot be said that the testator exacted or intended to exact more than the lawful rate, or that the loan was tainted with usury.  With respect to the loan of $1,000, agreed to be made December 8, 1897, it appears that this sum was actually advanced by the testator on October 30, 1897, without any deductions whatsoever.  Under the agreement it was also to be repaid out of the net proceeds of the collections, with interest at and after the rate of 5 per centum per annum, to be calculated from September 8, 1898, so that for nearly 11 months after the loan the plaintiff Benjamin Hagaman was to have, and did have, the actual use of the money without any charge.  If the bonus of $200 is taken as a charge for interest for the first year on both loans, it will be found to have been less than the interest at the limit of the lawful rate, 6 per centum.  The assignment and agreement of September 8, 1897, therefore, cannot be said to have been affected with usury at their inception, and, being valid at that time as security for the testator's collection charges and the loans above particularly discussed, they are not to be adjudged invalid as to those matters because of any subsequent usurious transaction.

The item of August 12, 1898, $125 presents none of the features of a loan and appears to have been a legitimate transaction.  The testator had received for account of the plaintiff Benjamin Hagaman from the executor of his uncle's estate, a check for $125, the proceeds of which he turned over to the plaintiff, less $12.50, the agreed collection charges of 10 per cent.  These collection charges may have been exorbitant and their exaction oppressive, under the particular circumstances; but the instruments of September 8, 1897, are not, for that reason, to be set aside as usurious, and are not assailed upon any other ground.  As to the latter loans or advances, however, usury is unblushingly apparent.  On December 4, 1897, the plain-

96 N.Y.S.—46

tiff Benjamin Hagaman had $2,100 out of which he returned to the testator $1,000, as an agreed bonus. On December 27, 1897, he had $1,500 and returned $350. On August 22, 1898, he had $3,500 and returned $1,550, and on April 1, 1899, he applied for and was promised an advance of $5,000. Of this amount he received $1,000 at once, which also was returned to the testator, and accepted by the latter, as an agreed bonus, and on April 17, 1899, the remaining $4,000 was forwarded to him. It appears that in every instance of these last-mentioned loans the defendant's testator exacted the promise of the plaintiff Benjamin Hagaman to repay the amount of the ostensible loan; that is, the sum actully loaned, with the bonus added thereto, and that these advances were severally made with reliance by both parties upon the agreement of September 8, 1897, whereby, it is to be remembered, repayment of all the advances was agreed to be made out of the net proceeds of the collections of the testator on account of the estate assigned to him, with interest at and after the rate of 5 per centum per annum. Computing the interest at that rate, not upon the amount of the net advances, but upon the amount of the ostensible loans, which the borrower agreed to repay, with interest, the usurious character of the transaction is in each instance undeniably present, the interest reserved, exceeding the limit of the lawful rate. The element of uncertainty as to the time for which the loan was to endure cannot, as in the instance of the advance of $3,200, hereinbefore first considered, absolve these later loans of their usurious character; for in respect to those there was a clear agreement to pay and to receive more than 6 per centum per annum on the sums actually loaned.

This last transaction, the advance of $5,000, the defendant's counsel seeks to explain as having been a purchase absolute by the defendant's testator of Benjamin Hagaman's interest in his uncle's estate, and to that end reference is had to three instruments in writing, each bearing date as of April 1, 1899, one, purporting to be a further and absolute transfer of Benjamin Hagaman's interest to the defendant's testator, reciting, as it does, the former assignment under date of September 8, 1897, as having been made to secure the assignee for the advances made, and a further payment of $5,000 as having been made to the assignor at the time of this later assignment; another, purporting to be a general release by the assignor of all his claims and demands against the assignee; and the third, purporting to be an agreement by the assignee, in consideration of the assignment of even date to himself, to pay over to the assignor one-half of all the net proceeds of collections in excess of $25,000 made or to be made for account of the assignor's interest in the estate of the deceased Benjamin Hagaman. Whatever the literal meaning of these instruments may be, or may have been intended to be, it is clear that their only actual consideration was the making of the ostensible loan of $5,000. That the acknowledgment by the plaintiff Benjamin Hagaman of the receipt of that sum, by way of the purchase money upon a sale of his interest in his uncle's estate, was wholly fictitious; and that these instruments of April 1, 1899, were severally intended by both parties to be nothing more than a subterfuge to serve as a cover for the usurious transaction is demonstrated by the assignee's exaction of

$1,000 of the sum mentioned, from the assignor, the plaintiff Benjamin Hagaman, as an agreed bonus for the ostensible loan or advance of $5,000. The return of this $1,000, under the circumstances, as they appear from the testimony of the plaintiff's witnesses, Benjamin Hagaman and Sigmund Feuchtwanger, the latter at the time of the transaction the agent of and attorney for the defendant's testator, and as such acting for him, is not consistent with any conclusion other than that the transaction was intended and was understood to be a loan, and not a purchase.

A point is sought to be made by counsel for the defendant that the charge of usury is not, in some instances, supported by the evidence precisely as pleaded, and that because of the variance the plaintiffs must be deemed to have failed in their proof. I do not concur in this. The gravamen of the complaint is usury; that is to say, the payment by the borrower or reservation on the part of the lender of a charge for the loan or forbearance. of money in excess of the lawful rate of interest. And this is shown when it is made to appear that the charge actually made or reserved for the use of the sum loaned was in excess of the limit of the lawful rate of interest, though it was less than the charge pleaded to have been made or reserved. I know of no rule which differentiates between a case involving usury and other cases in their adjective treatment. The cause of action, or the defense, as the case may be, is established if its constituents are proven. If usury be alleged, it is established when it is shown that more than the lawful rate of interest was taken or reserved; and this is so, though the excess of lawful interest may appear to have been greater or less than the excess alleged. A variance in this respect cannot be said to be fatal, as amounting to a failure of proof. If the variance is immaterial, it may be disregarded, or an amendment of the pleading allowed. If material, and the adverse party was misled by the pleading, an amendment may still be allowed and the case continued to some future day. Code Civ. Proc. § 539. No claim of surprise was made upon the trial. Neither did the defendant's counsel object to the introduction of evidence upon the ground of any such variance between the complaint and the proof. The objection now, therefore, comes too late, and should be deemed to have been waived.

The conclusion, of course, from what has been hereinbefore said, is that the instruments of September 8, 1897, are severally valid as to the loans of $3,200 and $1,000, therein particularly alluded to, and void, with those of April 1, 1899, as to all the later loans, and that the defendant should account for and pay over to the plaintiff Benjamin Hagaman, all the proceeds of the collections made by her testator from the estate of Benjamin Hagaman, deceased, for account of the said plaintiff's share of the estate, after deducting therefrom the collection charges of 10 per centum, and the several loans, $3,200 and $1,000, adjudged to be valid, with interest thereon from September 8, 1898, at and after the rate of 5 per centum per annum, to the time when the aggregate of the collections, less the collection charges, was sufficient to have enabled the defendant's testator to reimburse himself for such loans.

I regret that I cannot, because the statute is to the contrary, re-

quire the plaintiff Benjamin Hagaman as a condition to the relief extended to him, to make restitution of the moneys actually received upon the loans adjudged by me to have been usurious, as the rule prevailing in equity would have required. It is right, of course, that the lender, if he offends against the law restricting the rate of interest for the loan or forbearance of money, should be punished; but there appears to be no axiom in the science of lawmaking to justify the enactment of a statute calculated to enable one person to be dishonest that another may be made law-abiding. I can, therefore, do no more than to declare my repugnance to the statute referred to. All oppression, whether it be by way of an exorbitant charge for the loan of money or money's worth, or otherwise, is immoral per se, and the charges actually made by the defendant's testator, in the instances of the loans adjudged to have been usurious, appear to justify his denunciation by counsel for the plaintiffs; but a charge of more than the lawful rate of interest where there is no actual oppression, cannot be said to be in and of itself immoral. Blackstone tells us (Chase's Blackstone's Commentaries [Blanks Bros.' 3d Ed.] 564) that the Mosaical precept against the exaction of profit for the loan of money was of political origin and not of moral urging. The Supreme Court of the United States, speaking through Mr. Justice McLean in Lloyd v. Scott, 4 Pet. (U. S.) 205, 7 L. Ed. 833, said:

"The act of usury has long since lost that deep moral stain which was formerly attached to it; and is now generally considered only as an illegal or immoral act, because it is prohibited by law."

And Dr. Andrew Dickson White, in his History of the Warfare of Science with Theology (volume 2, c. 19, p. 264), shows how completely the claim, at one time prevalent, that interest for the loan of money, as such, is a matter for moral recognition and regulation, has been abandoned. It certainly cannot reasonably be said to be immoral in New York to charge above 6 per centum per annum, and moral in Idaho, Montana, New Mexico, and North and South Dakota, to charge 12 per centum per annum, the lawful rate in those states, 10 per centum in Arkansas, Florida, Kansas, Minnesota, Mississippi, and Oregon, 8 per centum per annum in Alabama, Georgia, Indiana, Iowa, Louisiana, Nebraska, Ohio, and South Carolina, and 7 per centum in Illinois and Michigan. If it be viewed as immoral per se in New York to charge above 6 per centum per annum, what is to be said of the people of Texas and of Arkansas, whose laws sanction any rate of interest to which the lender and borrower may agree, and who have by the Constitutions of their respective states inhibited by the Legislatures thereof from impairing the right to contract in that regard. I do not wish to be understood as entertaining the view that it is not the part of a wise governmental concern to restrict the rate of interest for the use of money according to the needs and conditions of the people of the particular state or country. Quite to the contrary. I can conceive that such may be wisely done. But assuredly, the cause of morality is better subserved, and the borrower is made sufficiently secure against oppression, if he be protected against the enforcement of his assumed obligation to the extent only of the excess over the lawful rate of interest either paid or agreed

to be paid, and I point to the rates prevailing in the different states only to show that a statute absolving the borrower from repayment of the sum actually received cannot reasonably be said to have any moral support. The present statute, which enables the borrower to refuse restitution of what he has actually received, contrary to the more salutary rule in equity, is as frequently made use of as an instrument of fraud, a trap for the uninformed and unwary, as the charge of interest in excess of the limit of the lawful rate is made a means of actual oppression. Ignorance of the law is no excuse, and hence the uninformed frequently is made a victim through the persuasiveness of the borrower. Such has been the experience of many members of the legal profession. It is certainly more in harmony with the dictates of conscience that the borrower should be made to return the equivalent of what he has actually had, and the statute, already modified as to loans by certain classes of persons, and call loans of $5,000 and over, by the banking law of 1892, should, in my opinion, be altogether repealed.

Requests for findings of fact and conclusions of law may be presented. The requests, as to the facts, should consist of propositions of fact deemed established by the evidence (Code Civ. Proc. § 1023), and not of requests to find specific evidence merely. The judgment for the plaintiffs, which is to be entered upon my decision, should omit any provision for costs against the defendant, either personally or in her representative capacity. The plaintiffs have elected to retain the sums actually received upon the usurious loans, $8,200, and it would seem that they are sufficiently compensated for the costs, the award of which in an equity action is in the discretion of the court.

Judgment for plaintiffs.